Good morning, Your Honor, and if it may please the Court, I'd just like to briefly outline sort of the most important issues that I think are relevant to this appeal. We could categorize the claims into two separate buckets, the wage and hour claims and the termination claims. As to the wage and hour claims, the central issues are whether the commute times are compensable and whether there's sufficient allegations regarding the denial of meal breaks. As for the commute times, I think under either of the relevant tests, the control test or the suffered or permitted to work test, the allegations are sufficient. The malign... Before you, I don't want to interrupt you too much here, but I want to get right to this. As you know, there was a class action filed that the settlement was approved on November 29th which arguably, if your client was served, he would be covered by that. Would you comment on that? Was your client served? Is he covered by the settlement in the class action? So, we received this letter two days ago. I do not believe at this time that my client was actually served with that and, you know, obviously this hasn't been briefed. This was never before the I respect that, but all I'm saying is that would you agree that if your client is part of the class, which he appears to be looking at the pleading, and if he was served, that at least a significant portion of this case goes away? Assuming for the sake of argument that my client was served, which I don't, you know, agree with at this point. I believe the fact that he was maintaining a separate single plaintiff action well before he was served operates as a opt-out of the class action. Okay, so you're basically saying that the fact he had this going before... You're saying it was it was done before the class action was filed in the other case? That's correct. Okay. You said a case that supports that position. In other words, in the usual class action, right, notice is sent to the class and the notice tells class members exactly how they can opt out. Are you saying a class member doesn't have to comply with that notice or just file a case? Can you cite me a case that supports your position? Given the fact that this was only to our attention on the 10th of January, I haven't had sufficient time to research that particular issue. I think the upshot is that this wasn't before the district court. It's not really before this court and that, you know, I think it would be improper for this court to make any determination based on the contents of Utila Quest's letter that they provided at the time. But maybe we'll need briefing from you on it later. But let's go ahead then. So with regards to the commute times, I think there's three cases really that show we're permitted to proceed with this claim. One is the Milan case, which holds that commute times are traveling to different job sites each day, as was the case with my client. The suffered or permitted to work test is satisfied under Mitchell and Wren, which holds that transporting equipment renders commute times compensable. We advised the district court that we could have added additional allegations to demonstrate that my client was required to transport a large amount from job site to job site and back to his home. And I think it's important to point out that there were three separate 12B6 motions. This commute time argument was only raised on the last of the three. It could have been raised in the other two, but they weren't. And arguably, that argument was waived, as we pointed out in our briefing. Counsel, let me ask you this. As you know, the court gave you opportunities to add facts to be a cause of action. What specific facts, if you had a chance to amend, what specific facts would you add to show that Utiliquest places, in quotes, requirements and restrictions on your client's commute? In other words, what non-conclusory facts could you add if you had an opportunity to amend the complaint? So it's the same facts that we pointed out in our briefing, Your Honor. And essentially, what they are is he was required to drive a particular car. He was required to load that car with particular equipment that was owned by Utiliquest. And then he was required to drive that equipment to the job sites. But the district court found that that, per se, did not qualify, didn't it? No, I believe what the district court essentially said was, we've already given you two times to amend, and we're not going to give you a third time. I understand that. But what I'm saying is, didn't the district court hear what you just said, considered it, and concluded that that really did not amount to a cause of action here because there was no control? I mean, you got the use of the car and all that sort of thing, but it didn't say that you couldn't drop kids off at school or whatever. Well, the transportation of equipment is actually more relevant to the suffered or permitted to work test as opposed to the control test. So if a particular employee is transporting equipment that he will then use at his job, various courts, including Mitchell and Wren, have held that that is so similar to working that it is suffering or permitting to work. As to the, I mean, I really don't think the district court ever directly addressed the additional allegations with regards to the transportation of equipment. Well, he found you had to state a cause of action, didn't he? It just says, I'm reading the court's order. It just says the court previously advised plaintiff that he would not get a third chance to amend. Okay. But the reason we said that it was because you had not stated a cause of action in the second cause of action he's saying, or whatever the number was, you just saying you got to change this if you want to have, you want to state a cause of action. And my question to you is what specifically would you change that you argue would change the district court's mind? I believe that we could allege facts that Moreno was required to drive Utila Quest vehicle and that he was required to load it with Utila Quest equipment and drive that equipment from his residence to the first job site and to every subsequent job site and then back to his residence. And that that means that he was working from the moment he left his residence to the moment he returned back to his residence. And I think we have case law that supports that theory. But didn't you already plead that and the district court found that did not state a cause of action? Technically it was never pled. It was an argument that was raised in connection with the 12B6 on the second amended complaint. And we stated, look, Utila Quest never raised this commute time argument until this final 12B6. We didn't anticipate the to include this stuff. Let me change the question a little bit. Could your client have stopped to do personal errands along the way? And was he, for example, allowed to take passengers? I don't think given the time constraints that were placed upon him, that he would have really been able to make very many stops. Well, was he told he couldn't do either of those things? I don't know specifically whether he was told that he's not permitted to do that or not, but I don't necessarily think that would be dispositive one way or another. Let me ask you a different question. You allege that your client was a supervisor, and yet he signed away his union rights. Isn't that kind of an inconsistency? If he had I think many times there's a legal dispute over whether someone is or is not a supervisor. I think that's a question of fact. And I think I've dealt with many, many cases where one side or the other for any particular reason will dispute whether someone constitutes a supervisor. And I respect that counsel. But what I'm troubled about here is your client admits that he not only did he sign a union waiver, but he had a bunch of other people sign union waivers as well, right? That is the allegation that Utiliquest went to him and said, we want to give everyone a 10% raise. And if you sign this waiver saying you won't unionize, I think it could very well be the case Utiliquest didn't regard him as a supervisor, but that doesn't mean he legally doesn't constitute a supervisor. Do you agree that if he is a supervisor, he's not a union potential? It's my understanding that yes, supervisors aren't part of the union. But again, it could very well be the case that Utiliquest regarded him as not a supervisor, but that his actual job duties rendered him a supervisor. Okay. So argument you want to make? Yes. Yes, Your Honor. So in addition, so I just want to briefly go over the garment preemption issues. So we've already touched on the supervisor question, which I think is the first question that should be asked. Because if there's a question as to whether my client could be a supervisor, then preemption doesn't apply and the motions should not have been granted. Assuming that he doesn't have sufficient allegations to be a supervisor. The next question the court should entertain was, was there allegations of concerted activity? The court, the district court got this wrong in two major ways. One is they relied on this notion of implied concerted activity. But the Bighorn Beverage case explains how that is only with regards to situations where there's a union. There was never a union in this case. The court also relied on the ANCO case, which was overturned in Greyhound and Myers. And we pointed that out to the district court and that you know, was ignored in essence. So there should be no finding of concerted activity. This is the lone acts of one individual. And the case law makes clear the object of the activity is not relevant. So whether or not he's advocating on behalf of other people, that is not necessarily relevant. What is relevant is, did he band together with other individuals? Or if he's acting alone, did other individuals give him authority to complain? How can that not be relevant? I mean, he was acting on behalf, that's the whole gravamen of the complaint here, isn't it? That he's acting on, he got his, he got his 10%. So the issue in his complaint comes down to how he's being treated with regard to advocating for all the other people. So that's concerted activity that goes under the NLRA and the district court shouldn't touch. That would be my conclusion on that point. Perhaps I overstated. It is relevant to the first prong of the analysis. The second prong of the analysis and the first prong we're not disputing in our papers. The second prong of the analysis, which we are disputing, the case Prill versus NLRB explains concerted activity cannot be imputed from the object of the action. So even if he's advocating on behalf of other employees, if he's doing that on his own volition, without their authority, then he is still acting alone and it's not concerted. So the mere fact that someone may complain on behalf of others and not on behalf of himself is independently insufficient to constitute concerted activity. And that's the Prill case. And then so even if the court were then to conclude, he's not a supervisor and he did engage in concerted activity, the motion still should not have been granted because of the public policy exception. And this is this Arcatis, Gribaldi and Page cases. And I think the district court got this wrong in a number of ways. First, it seemed to hold that these cases are expressly limited only to complaints concerning health and safety. That is just not the law. There's, you know, tellingly a request and the district court, neither of them cited to any legal authority that says this is expressly limited to health and safety. At best, the district court pointed out that, you know, frequently it is in that context. If you actually read those cases, you'll see that it's a balancing test and you balance the state interest against the federal interest. And I really don't see what the federal interest is here. Uniform application of labor laws. How will that be implicated in this case? This is a single plaintiff case. There's no union. We're not suing under any federal labor laws. Those are not elements of any of our claims. It's a state case that's in diversity. OK, let me your time is up. Let me ask my colleagues whether or not there are additional questions for Mr. Morsatz. Can I ask you, Mr. Morsatz, on behalf of the court, would you please provide within a week or sooner a 28-J letter for the court in which you address whether your client was, from your perspective, served with the class action that was settled November 29, 2021, and what impact, if any, that has on this case? You've indicated that the existence of this case served as an opt-out. Judge Tashima has asked you for legal authority for that. Would you please provide that to the court? And you wanted that? I'm sorry, exactly. And a 28-J letter as soon as possible, but no later than a week from now. OK, I will do that, Your Honor. Thank you. Very well, thank you. All right, Mr. Mayer, you represent Utiliquest. Good afternoon, Your Honor. Gosh, that was an impressive display on the first part of this question. It was like watching a psychic play Battleship or something, because I think that everybody really got the sense of where the important issues are. So normally, I would start by saying the district court should be affirmed in its entirety, but because of the issue regarding the settlement, I want to just address that on the front end. First of all, it was a surprise to us to hear that Mr. Moreno claims that he hadn't received the notice. Obviously, we'll look into that and provide whatever substantiation we can. We believe that we can do so certainly within one week. Additionally, if I can just add, I'm going to ask you to do the same thing that I asked Mr. Morsad for you. Please provide the court with a 28-J letter addressing exactly the same questions that I asked him. Yes, Your Honor, we'd be happy to. We do have some case law handy to answer Judge Tashima's question. The weight of authority side is clear. Filing an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient to preserve or constitute an objection. We'll provide plenty of cases in the 28-J letter. I'd rather save the time than list off a bunch of We're a little bit confused about why we're here. I think that the district court issued two very well-reasoned decisions regarding Mr. Moreno's claims for wrongful termination and a cluster of wage-hour claims. I'm going to start with the wage-hour claims because I believe that Mr. Moreno's counsel slightly twisted the record here. First of all, the district court judge did employ a three-strikes-you're-out per se rule in terms of denying leave to amend. Rather, the district court specifically considered the alternative allegations offered by Mr. Moreno and found them lacking. They did not, in their response, proffer additional allegations related to the transportation, for instance, of tools from his home to the first work site. What he said was, between job sites. That's a different argument and that's outside the scope of what they included in their motion to dismiss. Beyond that, they simply alleged that he was on a tight schedule. They didn't allege any mandatory use of a company vehicle. They didn't allege that he was subject to sufficient limitations on control. None of those arguments should have come as a surprise to Mr. Moreno. These were all issues that were identified to Mr. Moreno's counsel prior to us filing the motion. Had they opted to actually follow through and correct those on a motion to amend, we wouldn't have opposed that. I think that the district court is entitled to go based on the attempted amendments before they fail and then consider the proffered amendments that have been offered by We found that an employee was subject to the control of the employer during his commute because he was required to use the company truck and was permitted no personal stops or other personal use. If he could show facts similar to that, doesn't that save that portion of his complaint and he should be allowed to amend? If they had offered to do that before the district court, that's possible if Mr. Moreno's employment supported that, but he didn't. If he had those facts, he could have alleged them. Or if that was an issue that he hadn't thought about in his second amended copy of his complaint, then he could have offered it in response to our motion to dismiss. But I don't think that the district court has the obligation to hypothesize about what universe of facts might be out there that could potentially state a claim, particularly because we're dealing with facts and circumstances that are squarely within Mr. Moreno's employment. The circumstances of his employment. This isn't a securities fraud case or something like that where all of the real material information is in somebody else's control and Mr. Moreno had ample opportunity to amend his complaint to state a viable claim. Do you remember, I don't know whether you were the trial lawyer in this, but do you remember whether Rudy even came up in the pleadings before the district court? Your honor, I don't recall. I think the main case that was referenced was the Oliver v. Conaca-Minolta case which dealt with the transportation of tools, but we didn't have to get into that because the only allegation related to transportation between job sites, not from the initial and final job sites. So from your perspective, the facts of Rudy in this case are different in any event. Well correct, and to the extent that Mr. Moreno's counsel now is attempting to add to a record the allegations that he could have but chose not to pursue below, I mean that's a little too late at this point by a long shot. I'd like to turn over to the Garmin preemption aspect of this case quickly, unless the panel has any questions related to the wage claims. Okay, on Garmin, I think that there's a real fundamental misunderstanding about sort of how Garmin preemption operates in this case. So before getting into the specific facts, I thought that the Supreme Court set out a pretty solid policy statement in the farmer decision, that's 430 U.S. 290, and what the Supreme Court said is we cannot proceed on a case-by-case basis to determine whether each particular final judicial pronouncement does or might reasonably be thought to conflict in some relevant manner with federal labor policy. This court is ill-equipped to play such a role and the federal system dictates this problem could be solved with a rule capable of relatively easy application so that lower courts may largely police themselves in this regard. A 12b6 motion at the pleading stage is exactly the kind of circumstance where the talking about what the standard is for Garmin, let's step back and talk about what it's not. Garmin preemption does not require the existence of a union. Garmin preemption does not require the existence of a collective bargaining agreement. You know, cases relating to the Labor Management Relations Act or the Railway Labor Act deal with separate strands of federal labor preemption that are not at issue in this case. Rather, Garmin preemption is about the over issues concerning unfair labor practices and protected concerted activity. And your honor, it's hard to imagine activity that is more central to the purpose of the National Labor Relations Act than alleged misconduct in the course of attempting to organize a union, right? I want you to stop right there, Mr. Meyer, because this is the first case I've seen where there's sort of alleged concerted action not to organize a union, right? But to prevent the organization of a union. That's a concerted activity. Is that right? Correct, your honor, the object of the litigation, you know, invokes Garmin preemption, when, you know, the workers say, no, we're all, none of us want to organize. I'm sorry, I'm sorry, your honor, I missed the first part of your question. Is there a Garmin preemption case where Garmin preemption is invoked? Uh, you know, not because there's concerted effort to organize, but to not organize. The only effort here was not organized, right? That that is correct. The concern, well, I would actually say that it kind of gets broken down into two into two discrete buckets, right? So there's the first step, which is, first of all, can you set a case that applies Garmin preemption in that setting? No, your honor, I cannot. So first answer directly answer your question. No, we do not have a case in the briefing that says that if there is a concerted activity that is contrary or against the union's operations, that that is preempted by Garmin. But the definition of concerted activity under the National Labor Relations Act doesn't say whether that activity may in and of itself be an unfair labor practice. Rather, it just has to be for mutual aid or protection and involve, you know, one or more employees or be, you know, on behalf of other employees. Do you have a follow up question, your honor, before I proceed? You know, but all of the section five unfair practices are aimed at anti-union activity, right? Section, section eight. Yes. It's section eight. All right. And this is not anti-union activity. This is like, you know, just the opposite, isn't it? Well, it's concerted activity under section seven, because it relates to an attempt to obtain wages by one or more employees. And so the, the activity that is against, you know, that that punishes workers for engaging in concerted activity or grows out of that can in and of itself constitute an unfair labor practice. The most analogous situation that I can think of, although it's not exactly on point, is the Husseini case from Iowa, which dealt with a supervisor who filed wrongful termination claims when she alleged that she, in the course of union activity, terminated several employees for their union activity. And then she was subsequently terminated. And her argument was, I engaged in wrongfully terminated me. Based on our review and based on what's included in the record in the briefing, that's the most analogous case that we've come up with. I don't think that there's anything that's super squarely on all fours, except for the language of the statute itself, which authorizes or, or, or provides that concerted activity is anything that involves mutual aid and protection of which wages, the fundamental category, and then one or more employees. And if it's one employee, then it has to be on the authority expressed or implied of other, of other employees. And that's really what Judge Barat did in this case, right? He took the language of the statute, analyzed how that would apply in this case and concluded that it was covered by the NLRA, right? Correct. In two different, in two different forms, your honor. I believe that the first one, which is what we've been talking about, the continuation of protected concerted activity on behalf of other employees is something that Judge Barat specifically raised. And I don't believe that it's addressed at all in the appellant's opening brief. So I think we could just slide through on that basis. And it's, it's been waived. It is addressed in the reply brief and on their principal brief in either event. You know, I think that it's clear that this at least constitutes actual, you know, or arguable, you know, protected concerted activity. And it's something that should be squarely within the domain of the NLRB to decide in the first instance. Counsel, what, what portion of the Garmin decisions as applied to this case do you believe opposing counsel has waived by not raising those in his opening brief? The, the section that I specifically believe is that any challenge to Judge Barat's conclusion that Mr. Moreno participated in protected concerted activity by talking to other employees about a potential wage increase in exchange for opposing unionization. And to the, to the extent that he later went and talked or attempted to raise and, you know, the fact that other employees had been, had received that wage, even though he had, that would be an outgrowth of that protected concerted activity. That was one of the two different ways under Haney that Judge Barat said Mr. Moreno engaged in, at least arguably engaged in, protected concerted activity. Do you have other argument, counsel? The only, the only final, the final piece that I wanted to address is the supervisor element. I believe that, you know, this isn't a factual, Mr. Moreno's counsel characterized that as sort of a factual issue that needed to be, you know, addressed or should have been addressed. I'm not sure if that's referring to, you know, the fact of whether somebody qualifies as a supervisor or exempt employee under the FLSA or anything else. But instead, I think what we should do is we should look at what Mr. Moreno's own, own pleadings say. And what his own pleadings say, you know, in paragraphs 27 through 29 of his complaint, which is what you referenced previously, Judge Smith, is that he and other employees signed the union release. And, you know, if the NLRB made the mistake to include him within the bargaining unit, and he wasn't actually supposed to be because he was a supervisor, I certainly think it's a close enough call that it is at least arguably within the NLRB's jurisdiction to decide in the first instance. You know, I think that, you know, we should have, we should give the NLRB, excuse me, give the NLRB the opportunity to chart out the course of its own jurisdiction. It's not meant to be this extremely fact intensive, you know, decision at the very beginning of a case to put it inside for whether Garmin preemption applies. And so unless the panel has any other questions, I think that covers everything. Any questions by my colleagues? Very well. Mr. Morsatz, you don't have much time left, but you want to use what you have for rebuttal, please. Yeah, I just wanted to point out a couple of quick things. So the added allegation was not between job site to job site, it was job site to job site. I think that's a key distinction. The only reasonable interpretation of that is from his residence to the job sites and then back to his residence. It's not like these equipments are going to magically appear in his car once he gets to the first job site. Were you familiar with the routine case when you addressed the motion to dismiss? I'm not familiar with it at this particular moment. From your description of it, it sounds familiar to the same standards that were articulated in that case, having to do with using company vehicles and transporting equipment. So I think those would be about the same standards for the suffered or permitted to work test. Okay. Your time is gone here, but let me ask my colleagues whether either has additional questions for you. I have one question of appellant's counsel. You're talking now about transportation of equipment from his home to the job site. Is that right? That's correct, your honor. Now you call it heavy equipment. How does the equipment get to his home? In his truck. So his job involves going to various job sites throughout the day. Just a minute. So at the end of the day, he drives a truck home? That's correct. And the truck stays at his home and then in the morning, the same company truck he drives to the first job site? Is that what happens? That's correct. Is that in the record? That he drives the company truck home and it's full of equipment? So it is part of the record in the, in essence of, again, this commute time issue is only raised on the final 12. Can you give me the citation to record, excerpt, what page shows that? I will have to pull it up, your honor, one moment. So it would be located in appellant's, or sorry, appellant's opposition, which is to the second, to the 12B6, to the second amending complaint, which would be in volume two, pages 44 through 59. I can tell you more precisely if I pull that up. We can probably look that up now that we have this side. Judge Tashima, you want him to quote that for you? I agree with you. That's fine. Very well. All right. Thanks. Thanks to both counsel for your argument. In this case, the case of Moreno versus Utiliquest is submitted and the court stands adjourned for the day. Thank you, gentlemen. Have a nice day. Thank you, your honor.
judges: TASHIMA, SMITH, Murphy